Good morning, Your Honor. May it please the Court, my name is Patrick Joyce. I represent Gustav Klauszewski, the appellant in this case. With the Court's permission, I would ask to reserve two minutes for rebuttal. For as many years as I have been representing defendants in this district, Your Honor, when an individual comes in to proffer, at the end of that first session, the U.S. Attorney's Office invokes a prior president. What they like to say is, we'd like to continue to talk to you, we'd like to trust, but we also want to verify. It is a standard comment that's made in almost every case. In this case, Your Honors, Agent Cunningham's misplaced trust in Cyan Stafford and his unwillingness to actually verify information that could have been exculpatory to Mr. Klauszewski is a due process violation under Brady v. Maryland, which requires a dismissal of the case and at the very least, a new trial. In this case, Your Honor, well in advance of trial, defendant requested discovery from the government. He requested the contents of the telephone of Ms. Stafford. It was requested because the belief was there would be evidence in there which would be exculpatory to Mr. Klauszewski. Did you not get some content? We received some content much later. Yes, Your Honor. You say much later. Was that before trial? It was just prior to trial. It was not the evidence that was completely asked for. It doesn't appear to be as much information as Ms. Stafford seemed to suggest was available. She had talked about that there were text messages back and forth between the original owner of the weapons . . . Is this the phone that she lost? This is the phone that she says she lost, yes. She said she lost it at the airport. What can the agent do other than initiate a search for it, which was done, and do those things with a cloud that I do not understand that resulted in recovery of some material? What else can be done? Your Honor, where the agent failed was not once it was lost. It was well before it was lost. What period is there between when you ask and when it was lost? You ask after it was lost. Right, but I'm talking about, Your Honor, from the time in which the agent first realized there was evidence on that phone . . . The crux of your argument is that because she used the phone in the course of the criminal activity, they should have made a duplicate of its content. Isn't that the crux of your argument? Exactly, Your Honor. Now, the trial judge concluded that there wasn't bad faith in failing to do that, that you couldn't say with any kind of certainty that it was exculpatory or even with any plausibility that it was exculpatory, and you got comparable evidence. To the extent those are the rulings that you're challenging, why don't you tell us where the error is? Sure. Your Honor, originally, the ruling about potential exculpatory evidence, even in that circumstance, under Arizona v. Youngblood, if the court were to find bad faith, there still could be a dismissal of the case. Right, but by the time you asked for it, the item was lost. So the question is, what obligation did they have to make a duplicate of it? And that's what I'm not understanding in your argument. Your Honor . . . Even without a request, you're saying they were obliged to make a duplicate. Your Honor, it was clear in the testimony of Agent Cunningham that every other individual, I think there were six, who were arrested in this case, they made, they seized their . . . What legal obligation was there? That's the question. You're saying that there was past practice. In this particular case, there was past practice, but what legal obligation was there? Judge, it's not the legal obligation I'm asking the court to consider. What I'm asking them to consider is whether there was bad faith in not doing it. So the point is, you put together all this evidence. It was done in every other situation involving this arrest, but not this particular individual. We have a situation where the agent, shortly after the arrest, looks over the shoulder of the individual and sees that there may be information in there, text messages between her and the individual from whom the weapons came. He knows that evidence is there. He thinks there might be a video there. He still doesn't ask for it. Was this not all before the district court judge? Yes, it was, Judge. In the context of a hearing? But there was one thing that was not before the district court judge, and this is what we found out only at the very eve of trial, that this very same individual who supposedly lost her phone, and who the defendant would testify has seduced men, has tricked them into gaining property from them, that this same individual actually sent a fairly seductive picture to the case agent in the case. Now, he had received that picture prior to testifying at the hearing, but he didn't reveal that information to the hearing court judge. That would have been extremely important for the judge to understand and know, because if that's the type of information that she put out on her phone, then maybe there would be, in fact, more than just potential exculpatory evidence on the phone. The trial judge found that that kind of stuff was basically more prejudicial than probative, right? More confusing than probative, to be more accurate. That was when the judge decided I was not permitted to cross-examine the agent at trial. But that's the same as whether it was material. But in the context of the hearing, Your Honor, I think it would have added to the judge's analysis on whether or not bad faith on the part of the agent had taken place, because he didn't reveal that information to the court when the hearing was specifically about those events. The transfer of that material from the potential witness to the agent happened after the phone was given back, right? I don't understand the question. Well, the timing. She transmits the photograph you've alluded to after she's given back the phone. It was after she lost her first phone. This was a second phone. This was a different phone altogether. But the point is the first phone was gone, and the agent misconduct that you're arguing about now happened when he gave her back the phone, rather than making a copy of it. And at that point, there's no basis for thinking there was an untoward relationship. I'm not sure there's a basis for thinking there was an untoward relationship down the line, but certainly not at that point when the phone was given back. But Your Honor, there are also then proffer sessions where this woman comes in to the U.S. Attorney's Office, and again, this is later in time. This is not when things are in fast motion. The government doesn't ask for a phone. They still don't ask to try to get the information from that phone. Interestingly, in Judge Hellerstein's decision, he talked about the fact that this woman was not going to even come and testify. May I just be clear on that? Sure. The sessions when the woman comes in later are now no longer only with the agent, right? That's correct. So at that point, it's not the agent relationship. It's basically others, including, am I correct, the prosecutors? That's correct. So where is there a basis to think there's bad faith? Your Honor, I see I'm out of time. May I answer your question? Go right ahead. Your Honor, the bad faith, Your Honor, in this particular situation is that the agent may not have relayed what he knew to the counsel for the government. I'm not suggesting that counsel for the government even knew this information. I think it's information he kept to himself, because I believe if he had said to them, I know that there's some information there, I've seen that there's text messages, I know there's information which completely belies everything I put in my complaint, I think the government would- That you don't know. Not the last statement, right? I do know that, Your Honor, because the agent testified at the hearing that he now knows that the guns were not given on consignment, that they were not obtained actually by my client, but they were actually obtained from this woman who stole them from this man, Justin. You received some rebuttal? Will we hear you then? I have. Thank you.  Good morning. May it please the Court. My name is Bennett Carney. I represented the government at trial in this matter, and I now represent the government on appeal. The defendant, Gustav Klusiewski's conviction should be affirmed for the following reasons. First, the district court did not abuse its discretion in declining to dismiss the indictment against the defendant, in limiting cross-examination of one of the government's witnesses on irrelevant and prejudicial topics, in dismissing a tardy juror . . . If there hypothetically was a relationship between Ms. Stafford and the officer of the government, why would that be irrelevant? The hypothetical you're posing, Your Honor, is belied by the information that was before the district court when he made that ruling. But except the hypothetical. So if there were a relationship between the agent and the cooperating witness, wouldn't that be a problem? Yes, Your Honor, but the facts that Judge Hellerstein had were that the agent received this text message, which was months after the events concerning the source and Mr. Klusiewski, that upon receiving this message, which wasn't meant for him, it was meant for a target of a separate investigation, and the woman was having difficulty sending it herself. Once the agent received that message, he reported it to the government. But if you accept the hypothetical, I mean, doesn't that throw out all kinds of inferences that the jury might pursue, such as if the agent had a relationship with her, then that might account for why, in bad faith, he would not clone her telephone. And the fact that it was received after the first phone was gone and months after the investigation was conducted, that would seem to suggest that it was a personal relationship. I mean, I am not sure I know why somebody would be prevented on cross-examination from asking a question like that, based on a finding by the district court that the photograph was sent for a reason that does not seem all that plausible, frankly. The district court is the one that had all of the facts in front of it, and Judge Hellerstein did not abuse his discretion in assessing those facts and determining that questioning on that photograph was more distracting to the jury. In fact, as Your Honor is suggesting, it invites them to go on a sideshow and wonder about what this relationship was. It's not a question of whether it's a sideshow or the main event. In Judge Hellerstein's discretion, what he found is that it was not the main event, and it was, in fact, a sideshow, because there was no indication that there was repeated contact of this nature, that the agent's reaction upon receiving that photograph, in fact, indicated that there was no ongoing relationship. He disclosed it to the government right away, and he didn't attempt to conceal it, and that he was not, in fact, the intended recipient of that photograph. And so when all of those facts were in front of Judge Hellerstein, it was not an abuse of discretion to preclude cross-examination on that topic. He was asking him to resend it. Correct, to a target of an investigation. The agent did not do so, and the government instructed him to ask her not to engage in similar conduct in the future. If I understand your argument, you're saying this transmittal did not suggest any kind of a sexual or romantic relationship between the agent and the witness, but rather viewed most favorably to the defendant that the agent was willing to break rules for this witness, but that that was belied by the agent's immediate disclosure of it, and in light of those circumstances Judge Hellerstein acted within his discretion? Is that your argument? Yes, and Judge Hellerstein had all those arguments in front of him and explicitly found and did not abuse his discretion in finding that there was no indication that the agent broke protocol or rule in receiving this message. But what about the failure to maintain the witness's or the woman's phone records? Counsel said that you made a duplicate of everybody else in the case's phone, but not this person's. What's the government's response to that? As the agents testified at the hearing in front of Judge Hellerstein, and as Judge Hellerstein credited, there were several reasons why the phone was never imaged. The first was an operational concern in real time that the source needed access to that phone to continue communicating with Kozlowski. The second was the timing concerns with how fast that phone could be copied. How fast? How much time does it take? There was some discrepancy in the evidence on that point, Your Honor, but somewhere between hours and days depending on the personnel available and the complexity of the phone. You were copying everybody else's. Are you saying that it took weeks to copy everybody else's? Not at all, but those individuals didn't need continued access to their phone, and Judge Hellerstein, in his discretion, credited that after presiding over the hearing and hearing from the agents and in fact questioning them himself. What is the usual practice today with respect to imaging phones of informants who are out in the field doing actual work? As both Special Agent Cunningham and Special Agent Antonucci testified at the hearing and as Judge Hellerstein credited, it's an operational decision that's made at the time based on a variety of factors. My question was, what is the usual practice? I can't speak to what is usual in there. Minimally, case by case? As the agents testified, if there's time and ability, then it's imaged . . . So you're saying when someone is arrested and wants to cooperate right away, there is not a lot of time, and I suspect that most informants are in that position. Am I wrong or right about that? I can't speak to what percentage of informants are in the real time, next day position to cooperate versus a historical cooperation or something that could be down the road. But in this case, as was apparent at the hearing and at the trial, and as Judge Hellerstein found, there was quick turnaround. They were going to Miami within 48 hours to set up a meeting with Kozuski, and the woman was required to maintain consistent contact with him. The operational decision at the time was made, A, to let her maintain the cell phone rather than taking it from her, and given the newness of her cooperation . . . Was her cell phone monitored? That is, was it monitored through a consensual wiretap? No. The second cell phone, I believe, came out at the hearing, had a program on it that allowed real time monitoring, which is why she had difficulty transmitting that photograph. The technology prevented her from texting the photograph, which is why she attempted to send it to the agent. But I think the key point here is the defendant got the information he was seeking, and he had the ability to use that information at trial. He says not all, so why don't you tell us what you think you gave him and what he thinks is missing? What the defendant explicitly represented to Judge Hellerstein that he was seeking was some photographs and three videos that were on the source's cell phone, and that are apparent from the audio recording of the February 26th meeting. He received photographs that are consistent with the descriptions that are on that audio recording, and he received a video that is consistent with the descriptions of what is on that recording. Now, the defendant has not asserted that the other two videos would be different in any way. What he has asserted is that he does not appear on those videos, and he does not appear on the video that he received. So if he had wished to make that argument and to introduce that video evidence at trial, he had the means to do so. He did not. He had the means to cross-examine Special Agent Cunningham at trial about what he observed on the video, what he observed on the source's cell phone, and he did not. And that is because those videos are not exculpatory in any way. And so, it wasn't helpful to the defendant's offense to pursue that line of questioning. Unless Your Honors have further questions, we're happy to rest on the papers. I want to pursue this a little further with you. Basically, what you've got here is a cooperator who now has an electronic device that would give you, we'll put aside the defendant for a moment, give the government documented evidence of the alleged conspiracy, and you're telling us that the government does not feel it's obliged to make a copy of that and maintain it? And I think it would certainly be helpful to have a copy of that phone, particularly because it would provide stronger additional evidence against the defendant. But there's, given the fact that it was not apparently exculpatory when the government had it, there was no obligation to copy it. Thank you. Thank you. Thank you, Your Honors. Briefly, one of the statements that was made was that when this picture from the second telephone was transmitted to the agent, that he immediately told the government about it. The government did not tell defendant about that until just before trial. And in fact, I believe the hearing regarding the Brady violation occurred in between the time that . . . Judge Hellerstein heard that. He had a basis for concluding that there was no untoward relationship between the cooperator and the agent, because the agent was not doing anything untoward. Rather, when the cooperator suggested he do something untoward, he immediately reported it, and therefore, that there's no materiality to the circumstances. Why is that not persuasive? My point, Your Honor, is that had Judge Hellerstein had that information at the time of the Brady hearing, he may have found bad faith. I didn't believe that the government knew about that, because we hadn't been told about it at that time. Did you ask him to revisit that bad faith? I don't believe I did. I don't believe I did. Your Honors, the other issue is this, in terms of bad faith, and the court seemed to hit on this question. The agent was asked about why he did not pursue this, and one of his answers was, well, we felt like we had all the information we needed about this conspiracy. Again, I've been doing this a long time. I've never seen a time when anyone in this office or their agent said, oh, we have enough evidence. We don't have to go get more. That goes to whether or not the investigation was ideal. That doesn't go to whether or not you have sustained a Brady violation. But I think it goes to whether or not the officer was being truthful to the court when he made those answers. In fact, when he said he didn't have time . . . Judge, I see I'm out of . . . Go right ahead. When he said he didn't have time, even Judge Hellerstein said, I take my iPad to the Apple store all the time. It doesn't take that long. What about . . . Go ahead. I'm sorry. Go ahead. What about the government's argument that the only thing you didn't get were certain videos, but the video you got showed that your client was not present at a particular event. So you had the argument that you say you wanted to make. What's your response to that? I think there were other videos, Your Honor, number one. And number two, the reason why we didn't . . . I understand that. But the government is saying all those videos could have shown that would have been favorable to your client is that he isn't present at certain meetings. Well, he wasn't present in the meeting you got the video of, and yet you didn't argue that to the jury. So they're saying this is really not something that was critical to your defense. Tell us why that's not sound. Because the superseding indictment that was brought down just before trial did not include the charge of any Hobbs Act robbery that resulted in the obtaining of those weapons. That event was actually excluded from the case at that time, and the only Hobbs Act count involved what was going to happen in the future. So from a tactical point, it made very little sense to go back and talk about the Hobbs Act. I'm not sure that I understand. Sure. So you're saying that it's a different Hobbs Act conspiracy that was ultimately tried? The facts, yes. The fact of how the guns were obtained was in the initial Hobbs Act count. That was actually excised from the indictment when we went to trial. And it was agreed, I think, by all the parties that that event was a burglary and it wasn't a robbery, and that it was the future so-called robbery that was being tried. Thank you. Thank you, Your Honor. We'll reserve decision.